# UNITED STATES DITRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DOROTHY HAWTHORNE-BURDINE

            Plaintiff, Pro Se

vs.

Case No. 18-cv-13285

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
ANTHONY P. PATTI

OAKLAND UNIVERSITY, a Michigan
Public University;
OAKLAND UNIVERSITY POLICE DEPARTMENT;
MEDICOLEGAL SERVICES, LLC;
MARK SCHLUSSEL; RICHARD DEVORE;
MELISSA STOLICKER; MICHAEL KRAMER;
RIGHARD FLYNN; RONALD ROBINSON;
SCOTT KUNSELMAN; W. DAVID TULL;
GEORGE HYND; BETTY YOUNGBLOOD;
JAMES LENTINI; VICTOR ZAMBARDI;
CATHERINE RUSH; SAMUEL LUCIDO;
JANINE DEWITTE; MARK GORDON;
SARAH NEWTON; JOHN KRAUSS;
GLENN MCINTOSH; NANCY SCHMITZ;
JAMES FRANKLIN; KERRI SCHUILING;
GARY MOORE; DARLENE SCHOTT-BAER;
CHERYL MCPHERSON; CARLY SCHATZBERG;
CHERYL MICHELLE PISKULICH;
KATHLEEN WALSH SPENCER;
DOES 1-100, inclusive;
ALL individuals sued in official and personal capacity; and
ALL Defendants sued jointly and severally.

            Defendants

_____/

# PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMSS AND/OR SUMMARY JUDGEMENT, BIREF IN SUPPORT OF OPPOSITION MOTION, AND CERTIFICATE OF SERVICE

## TABLE OF CONTENTS

Page

CONCISE STATEMENT OF ISSUES PRESENTED……………………………..ii

TABLE OF CONTROLLING AND MOST APPROPRIATE AUTHORITIES…..iv

INTRODUCTION………………………………………………………………1

BRIEF IN OPPOSITION TO DISMISSAL MOTION………………………..…3

ARGUMENT……………………………………………………………………3

I.      Administrative Procedures Not Fatal to Claims…………………….....3

II.     Legal Standards Met to Avoid Dismissal……………………………….9

        A.      Fed. R. Civ. P. 12 (b)(1)…………………………………………9

        B.      Fed. R. Civ. P. 12(b)(6)……………………………………………10

        C.      Fed. R. Civ. P. 8(a)(2)……………………………………………10

        D.      Fed. R. Civ. P. 12: Civil Rights Violations……………………12

        E.      Fed. R. Civ. P. 56. Summary Judgement……………………14

III.    Oakland University, Et Al Are Not Immune…………………………15

        A.      The Eleventh Amendment, Sovereign Immunity…………………15

        B.      Supplemental Jurisdiction and Work sharing Agreement………17

## STATEMENT OF ISSUES PRESENTED

Should this Court dismiss Plaintiff's Complaint and/or award summary judgement to Defendants where:

A. The Plaintiff timely exhausted all administrative procedures and remedies for her case;

B. The Plaintiff's Complaint adheres to the legal standards in stating claims for Defendants' violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C 2000e, et seq.; Title 1 of the Americans with Disabilities Act of 1990, 42 U.S.C, 12111, et seq.; Title V, Section 503 of the Act, 42 U.S.C 12203; the Age Discrimination in Employment Act of 1967, as amended; the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"); and the Michigan Persons with Disability Civil Rights Act ("PWDCRA," MCL §37.1101 *et seq.*); and

C. The Plaintiff is entitled to injunctive relief under Ex pate Young?

Plaintiff's contends the answer is "No."

## TABLE OF CONTROLLING
## AND MOST APPROPRIATE AUTHORITIES

<u>**Cases**</u>                                                                                          <u>Page</u>

*Alden v. Maine, 527, 757, U.S. (1999)*……………….…………………….    16

*Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)*……………………….    15

*Ashcroft v. Iqbal*, U.S. 129 S. Ct. 1937, 1949-1950 (2009)…………………….    11

*Arista Records*, 604 F.3d at 120………………………………………….…….    11

*Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)*……………..……..    11

*Carten v. Kent State Univ., 282 F.3d 391, 396 (6th Cir. 2002)*…………………    16

*Celotex, 477 U.S. at 324*………………………………………………………    14

*Chase Grp. Alliance LLC V. City of N.Y. 620 F.3d (2d Circ. 2010)*……………    12

*Clark v. Claremont University Center, 65 FEP Cases 919 (1992)*…………….      6

*Coakley v. Welch, 877 F.2d 304, 307 n.2 (4th Cir. 1989)*……………………….    16

*Elliott v. Hinds, 786 F.2d 298, 302 (7th Cir. 1986)*……………………………….    16

Ex Parte Young, 209 U.S. 123, 155-56 (1908)……………………………………    15-16

Fetsch v. City of Roseburg No. 6:11-cv-6343-TC………………………………..      7

*Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995)*…………….    12

*Gregory v. Daly, 243 F.3d 687, 691 (2d Circ. 2001)*………………………………    12

*Insur Bro. Anti Litig*, 618 F.3d 300, 319 n. 18 (3d Cir. 2010)……………………    10-11

*Kimel v. Florida Bd. of Regents, 528 U.S. 62, 91 (2000)*…………………………    16

*Koslow v. Pennsylvania, 302 F.3d 161, 179 (3d Cir. 2002)*………………………    16

*Lucarell v. McNair, 453 F.2d 836, 838 (6th Cir. 1972)*……………………………    12

*McGarry v. Pallito, 687 F.3d 505, 509, 510  (2d Cir. 2012)*………………………    10

*Meiners v. Univ. of Kan., 359 F.3d 1222, 1232-33 (10th Cir. 2004)*...............   16

*Nelson v. University of Texas at Dallas, et al., (5th Circ) (July 2008)*.............   16

*Seminole Tribe v. Florida, 517 U.S. 44, 73 (1996)*.....................................   16

*Skinner v. Switzer, 131 S. Ct. 1289, 179 L. Ed. 2d 233, 242 (2011)*...............   10

*State Employees Bargaining Agent Coal. v. Rowland,*
    *494 F.3d 71, 96-98 (2d Cir. 2007)*.....................................................   16

*Tarshis v. Riese, 211 F.3d at 35 (2000)*.....................................................   12

*Treleven v. Univ. of Minn., 73 F.3d 816, 819 (8th Cir. 1996)*.........................   16

*Twombly*, 550 U.S. at 565 n.10.....................................................   11

Velez v. Tuma, Doc. No. 138952, No. 5 (July 23, 2012)................................   17

*Warnock v. Scott, No. 00-50106, 2001WL563628 (5th Cir. May 7, 2001)*..........   16

*Wolcott v. Sebelius*, 2011 U.S. App. LEXIS 5019 at *34 (5th Cir. 2011)...........   11

**Statues:**

20 U.S.C. § 1232g, 34 C.F.R., Part 99

28 U.S.C. § 1331

28 U.S.C. § 1332

28 U.S.C. § 1367

42 U.S.C. § 2000 et seq.

42 U.S.C. § 12111 et seq.

42 U.S.C § 12117

42 U.S.C. § 12203

MCL §37.1101 et seq.

MCL §37.2101

MCL § 600.6304

## Rules

Fed. R. Civ. P. 8(a)(2)

Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 56(f)(1)

LR 7.1(a)

# INTRODUCTION

On September 16, 2015, Pro Se Plaintiff, Dorothy Hawthorne-Burdine ("Plaintiff" or "Hawthorne-Burdine"), former Associate Professor of Nursing at Oakland University, submitted a Complaint (Doc. 1) alleging Defendants harassed and discriminated against her because of her race, age, and disability. Plaintiff also alleged that Defendants retaliated against her after she filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC"), which EEOC cross-filed with the Michigan Department of Civil Rights ("MDCR"). (Exhibit A). Plaintiff's Amended Complaint (hereinafter referred to as "Complaint") alleges four EEOC-Federal (Doc. 4, Pages 46-50) and five MDCR-State claims (Id., Pages 50-56).

On October 29, 2015, Defense Counsel Daniel Bernard (hereinafter referred to as "Counsel Bernard"), representing all 31 Defendants including Medicolegal Services (hereinafter referred to as "Medicolegal"), filed a motion to dismiss Plaintiff's Complaint and/or summary judgment. On October 30, 2015, Medicolegal filed a second motion to dismiss Plaintiff's Complaint through Counsel Katherine Van Dyke (hereinafter referred to as "Counsel Van Dyke"). Here in this Opposition, Plaintiff responds to the five *Statement of Issues Presented* in Counsel Bernard's motion to dismiss and/or summary judgment. (See Doc. No. 12, Page vi)

For comments in Counsel Bernard's eleven pages of *Statement of Facts*, Plaintiff's responses are appropriately subsumed within her remarks on the *Issues*

1

*Presented.*  Plaintiff includes documents as Exhibits[1,2] to show the eleven pages of information provided by Counsel Bernard is copied/pasted from his failed motion to dismiss Plaintiff's case from the outset of the arbitration proceedings and from a not-so-convincing post-arbitration hearing brief, all submitted to Arbitrator Robert McCormick.[3]  Under Counsel Bernard's legal representation, Arbitrator Robert McCormick ruled against Oakland University ("Oakland") but ruled in favor of the Plaintiff and her Union (the American Association of University Professors, ("the Association"), who were represented by Attorney Robert Fetter's[4].

The movant, Counsel Bernard, provides no information on seeking concurrence on the motion pursuant to L.R. 7.1(a).  Medicolegal has two listed Defense Counsels, Katherine Van Dyke and Daniel Bernard, representing it from two different law firms.  Both of Medicolegal's Defense Counsels submitted separate Motions to Dismiss.  (Docs 12 and 14)  However, neither of the Counsels have made contact with the Plaintiff to discuss issues in the case or in their motions to dismiss the case.  Counsel Bernard did not certify for any of the Defendants that he was or was not able to conduct a conference with the Plaintiff on concurrence in the motion.  (LR 7.1(a))  Thus, Counsel Bernard has filed this Motion to Dismiss Plaintiff's Complaint in violation of the L.R. 7.1 rule for the Court.

For the following reasons, the Court should deny Defendants' motion in its entirety.

---

[1] See Exhibit B for a copy of Counsel Bernard's Motion to Dismiss the Plaintiff's case at arbitration.
[2] See Exhibit C for a copy of Counsel Bernard's arbitration post-hearing brief for Oakland University.
[3] See Exhibit D for a copy of Arbitrator Robert McCormick's Opinion/Award.
[4] See Exhibit E for a copy of Robert Fetter's arbitration post-hearing brief for the Plaintiff and the Association.

## BRIEF IN OPPOSITION TO MOTION TO DISMISS

## I.    Administrative Procedures not Fatal to Claims

Plaintiff timely exhausted all administrative procedures and remedies for her case as described in the Complaint[5] and as shown in associated exhibits.[6,]

Counsel Bernard, however, argues that "The plaintiff's failure to file a grievance over the tenure denial is fatal to these claims." (Doc 12, page 21)  **This is a false statement.**  Plaintiff was not contractually required under the 2012-2015 Collective Bargaining Agreement ("CBA")[7] to arbitrate tenure.  Counsel Bernard attempts to **mislead this Court** by citing cases with dissimilar CBAs, using dissimilar language for grievance requirement, and dealing with dissimilar issues from the Plaintiff's EEOC/MDCR claims and her employment situation at the time of termination through the EEOC/MDCR filing event of retaliation.  Also, Counsel Bernard asserts "The Plaintiff's race claim is based exclusively upon her tenure denial, which is a contractual process, and for which plaintiff has failed to exhaust her administrative remedies."  (Doc. 12, page 21 at Item F)  **This is also a false statement**.

Litigation of Plaintiff's EEOC/MDCR claims alleging discrimination, retaliation, and harassment are not conditioned on filing a grievance for tenure; and

---

[5] See Doc. 4, ¶¶ 39-40
[6] See Exhibit A for EEOC documents and Exhibit F Grievances at Step 1 and Step 2.
[7] See Exhibit G for a copy of page 24 from the 2012-2015 CBA.

therefore, not fatal to her EEOC/MDCR claims.  Unlike the cases cited by Counsel Bernard, language in the 2012-2015 CBA does not mandate the Association grieve a negative tenure decision for a faculty or collective bargaining member; it states, "If [emphasis on **If**] the Association is aggrieved by the decision reached by Oakland, it may… [emphasis on **may**] demand prior to October 1 that the case be reviewed through the grievance procedure."  (See Exhibit G, page 24, Article VII, Paragraph 41c(4)(e)(1)).  The Plaintiff nor the Association was aggrieved by Oakland's New Contract Letter of July 2014, which informed Plaintiff that she will be assigned to teach beginning the fall 2014 term without restrictions.[8]  Thus, there was no tenure issue to grieve.  Oakland awarded tenure to Plaintiff Hawthorne-Burdine in the New Contract Letter that came about two months after negative reviews submitted by two advisory committees, NCAP[9] and FRPC, one week after EEOC served the discrimination and harassment charges on Oakland University, and within one month prior to the negative decision rendered by the Board of Trustees.[10]   Also, Oakland followed procedures in the 2012-2015 CBA on page 24,[11] Article VII, Paragraph 41c-(4)(d) for the New Contract Letter, which shows that Interim Dean Gary Moore as the head of Plaintiff's academic unit and Scott Barns of the Association were notified of Oakland's decision on reemploying Plaintiff without restrictions starting the fall 2014 term.  Interim Dean Gary Moore responded in an

---

[8] See Exhibit H.  "New Contract Letter" signed by C. Michelle Piskulich, Associate Provost, dated July 8, 2014 on the first page and July 2, 2014 on second and third pages.  This Exhibit also contains Plaintiff's response letter.

[9] See Exhibit I for the Nursing Committee on Appointment and Promotion ("NCAP") and for the Faculty Re-employment and Promotion Committee ("FRPC") negative recommendations.  Plaintiff's Rebuttals to these reviews are also contained in this Exhibit.

[10] See Doc 4, ¶¶ 45-46, 231-240, 272, 294.  Also see Doc 12, Exhibit T, # 21 submitted by Counsel Bernard.

[11] See Exhibit G

email to Plaintiff's inquiry about her fall term teaching assignment (Doc. 4, ¶ 240; Exhibit J for the email).[12]

Serving as the attorney for Oakland during the arbitration, Defense Counsel Bernard, within a few days before October 1, 2014, submitted to the Association's Counsel Robert Fetter, a proposed *Grievance Resolution Agreement* endorsed by Oakland's Provost, James Lentini.  (See Exhibit K)  This proposed *Grievance Resolution Agreement* required the Association and Plaintiff to cease all Grievance procedures and remedies under the CBA, and Plaintiff was to withdraw her EEOC/MDCR Charges with prejudice.  It is plausible, then, that Defense Counsel Bernard, administrators, and the legal team headed up by Victor Zambardi at Oakland did not desire for the Association to exercise any rights afforded the Plaintiff under the CBA to grieve a negative tenure decision rendered by the two advisory committees or the negative decision later rendered by members of the Board of Trustees at their meeting on August 12, 2014.[13]   After the Plaintiff, the Association, and Counsel Robert Fetter for the Association rejected Oakland's offer, Victor Zambardi issued a Position Statement dated October 9, 2014 to EEOC as a response to Plaintiff's retaliation charge in lieu of mediation.[14]

On the issue of what Counsel Bernard refer to as Plaintiff's "race claim [being] based exclusively upon her tenure denial, which is a contractual process,

---

[12] Gary Moore stated, "I have not completed Fall teaching assignment yet. I will get back with you when I have completed that work."  This statement shows Plaintiff was to be assigned to teach in fall 2014.
[13] See Doc 12, Exhibit T, Item # 21.
[14] See Doc. 4, ¶¶ 10 and 253.  Also see Exhibit A for Mr. Zambardi discrimination and retaliation Position Statements to EEOC where he stated Dr. Hawthorne-Burdine filed false charges of discrimination and retaliation "for an improper purpose to harass, cause unnecessary delay and needlessly increase the Employer's cost."

and for which plaintiff has failed to exhaust her administrative remedies," the Courts recognize that the subjective nature of academic personnel evaluation decisions creates the potential for race and other illegal forms of discrimination. This position is described in a jury-trial case that rendered one of the nation's largest damage awards in an academic discrimination lawsuit to an African American faculty who was subjected to similarly flagrant and intentional discrimination as experienced by Plaintiff Hawthorne-Burdine at Oakland. *Clark v. Claremont University Center, 65 FEP Cases 919 (1992)*

Racial discrimination in the academic setting is a complex concept involving many acts and many entities working in concert. So, it is plausible that the Plaintiff's "race claim" was not based exclusively upon one single act, her tenure denial, as espoused by Defense Counsel Bernard. Counsel Bernard, however, appears to have forgotten Oakland's unfair labor practices, numerous violations of the CBA, and an untold number of willful, egregious acts done in concert by multiple Defendants against Plaintiff Dr. Hawthorne-Burdine. These acts included the then-Chief Samuel Lucido issuing a persona non grata (PNG) to Dr. Hawthorne-Burdine. Dr. Hawthorne-Burdine became the first African American female senior faculty in Oakland's history to receive a PNG order. Dr. Hawthorne-Burdine also became the first faculty in Oakland's history to be ordered, by the police chief, to undergo three unauthorized medical exams, which were performed by Medicolegal's IME evaluators, and prohibited from having contact with students (See Exhibit

6

M).[15;][16]  Oakland University refused several of Plaintiff and her union's, AAUP,

request to provide evidence in the case showing why Oakland University took the

actions they did against the Plaintiff.  Oakland University also denied Plaintiff and

her union's request for a Name-Clearing or Loudermill Hearing.[17]  As a result of

Oakland University's actions, Plaintiff's union, AAUP ("the Association), were

forced to file both Step-1 and Step-2 grievances (See Exhibit F).  Due to Oakland

University's refusal to provide evidence to Plaintiff and her union in the case, Judge

Julia Stern ruled that Oakland University had engaged in Unfair Labor Practices

and she issued a Show Cause Order (See Exhibit O).  Oakland University, however,

continued with the same tactics.  In response, the Association's Counsel Robert

Fetter filed a second Unfair Labor Practice charge.  The second Unfair Labor

Practice charge was due to Oakland University's attempt to stall the arbitration

hearing (See Exhibit O).  After receiving the second charge, Oakland discontinued

its behavior and the final two days of arbitration hearing were finally held in May

of 2015.  Three months after the arbitration hearings ended, Arbitrator Robert

McCormick ruled that Oakland University had violated the 2012-2015 CBA in

---

[15] See also Doc. 4, ¶¶ 197-198.  Arbitrator McCormick stated, in his Opinion located in Exhibit D, "The evidence
persuades the Arbitrator that however one may define the term "discipline" in the abstract, the University itself, as
well as the Association, viewed the matter as disciplinary in character at the time."  Arbitrator McCormick
describes how Plaintiff was wrongfully issued a persona non grata based solely on a 22-minute redacted audio
recording of one of Plaintiff's class sessions.  The audio recording was in direct violation of the Family Education
Rights and Privacy Act, 20 U.S.C. § 1232g, 34 C.F.R., Part 99; also see ¶ 205 in Doc. 4.
[16] See Exhibit L for Arbitration Transcript, Volume 4 at page 349, 1-3.  Cheryl Michelle Piskulich stated, in
arbitration, "That it wasn't an employment issue, that this was an issue that was related to health and safety based
on an audiotape of the class lecture made by a student."
[17] See Exhibit N.  A name-clearing/loudermill hearing is not the same as arbitration hearing proceedings, since it is
not a trial.  Also see Fetsch v. City of Roseburg No. 6:11-cv-6343-TC

numerous ways and he issued a Cease-Desist Order for Oakland University to stop its violation of the 2012-2015 CBA (See Exhibit D).

In Spite of having Arbitrator McCormick's written remarks and typed Opinion/Award in eye-sight, Counsel Bernard wrote these **false statements** in his Motion to Dismiss, "Following a hearing, an arbitrator…did not find the removal itself [referring to the persona non grata] was improper or unwarranted, nor did he impose any remedies on the University."[18]

As the only senior African American faculty on tenure-track in the School of Nursing, it is undisputed that Plaintiff Dr. Hawthorne-Burdine was defamed. She was criminalized (See Exhibit P), stigmatized as described by Arbitrator McCormick (See Exhibit D, page 32), ostracized (Doc 4, ¶¶ 147-157; Exhibit Q),[19] pitted against other African-Americans (Id. ¶¶ 121-146; Exhibit Q), bullied by individuals not of African American descent (NAAD) (See Exhibit R), falsely accused of being a terrorist (See Exhibit H); falsely accused of threatening to kill a faculty colleague (Id.); falsely portrayed as a mentally unstable elderly African American woman with brain disturbance, cognitive decline, senile dementia, organic brain syndrome, and/or Alzheimer (Doc. 12, Restricted Items # 15-17)[20]; subjected to cultural

---

[18] See Exhibit D, page 34 for Arbitrator McCormick's statement that "In this case the Committee reached its conclusion that Dr. Hawthorne-Burdine's presence on campus constituted a safety threat solely on the basis of Ms. Schatzberg's audio recording. They did not interview Ms. Schatzberg, Dr. Hawthorne-Burdine, or any of the more than forty other witnesses in the class…Dr. Hawthorne-Burdine …was a senior faculty member who had been nominated for, and awarded, teaching honors in recent years. As was the case with the University-selected medical professionals who subsequently assessed Dr. Hawthorne-Burdine's psychological condition, a more in-depth inquiry may have persuaded the Committee that although her conduct was troubling, her immediate removal was unnecessary."

[19] Exhibit Q includes email communications with Cheryl McPherson and Topaz Morrison.

[20] The three Medicolegal IME documents made available in PACER by Counsel Bernard have been restricted and sealed by Court order.

insensitivity by individuals not of African American descent (Doc. 4, ¶¶ 179-180; Also see Exhibits A, D, E, H, L, P); and Plaintiff Dr. Hawthorne-Burdine has experienced a recent severity of emotional traumatization from seeing her private and sensitive health information made available by Counsel Bernard on PACER to numerous unauthorized individuals throughout the world in direct violation of the Privacy Rule for this Court and federal/state statutes (Doc. 20). All of these alleged acts in Plaintiff's "racial claim" were not based exclusively upon one single act, tenure denial.

Denial of Defense Counsel Bernard's Motion to Dismiss Plaintiff's Complaint and/or Summary Judgement for Defendants is warranted.

## II.    Legal Standards Met To Avoid Dismissal

### A.    Fed. R. Civ. P. 12 (b)(1)

Pursuant to Fed. R. Civ. P. **12(b)(1),** the Court has subject-matter jurisdiction to hear the Plaintiff's case. Statements on the Court's Jurisdiction and Venue are included in Plaintiff's Complaint. (Doc 4, ¶¶ 12 and 13) The two primary sources of the subject-matter jurisdiction of the Federal Courts are diversity jurisdiction and federal question jurisdiction. Diversity jurisdiction permits individuals to bring claims in Federal Court where the claim exceeds $75,000. 28 U.S.C. § 1332. As stated in Plaintiff's Complaint, the monetary amount exceeds $75,000. Plaintiff's starting 8-month salary in 2010 was $75,000. The Plaintiff is asking for front pay, back pay, and punitive damages; which will all be greater than the $75,000 amount needed in order to establish diversity jurisdiction. Under the

9

federal question jurisdiction, a litigant, regardless of the value of the claim, may bring a claim in Federal Court if it arises under federal law. The Plaintiff's claims under Title VII of the Civil Rights Act of 1964, Title I of the Americans with Disability Act of 1990, and the Age Discrimination in Employment Act of 1967 gives the Court jurisdiction. Based on 28 U.S.C. §1367, the Court also has supplemental jurisdiction to hear Plaintiff's state claims under the Michigan Elliot-Larsen Civil Rights Act ("ELCRA," MCL §37.2101) and the Michigan Persons with Disability Civil Rights Act ("PWDCRA," MCL §37.1101 et seq.)

### B. <u>Fed. R. Civ. P. 12(b)(6)</u>

In considering the Defendants' motion to dismiss a Plaintiffs' Complaint under Federal Rule 12 (b)(6), "the Court must view the Complaint in the light most favorable to the Plaintiff, treat all well-pleaded allegations as true, and dismiss the Plaintiff's claims only if it is without doubt that the Plaintiff "can prove no set of facts in support of the claims that would entitle [her] to relief." *Ashcroft v. Iqbal, U.S. 129 S. Ct. 1937, 1949 (2009)* The Plaintiff is representing herself as Pro se and is aware that she must comply with the pleading standards of the Federal Rules of Civil Procedure. Courts, however, have ruled that a Pro se's arguments will be construed liberally and held to a lesser stringent standard than the arguments written by a trained attorney. *McGarry v. Pallito, 687 F.3d 505, 509 (2d Cir. 2012).*

### C. <u>Fed. R. Civ. P. 8(a)(2)</u>

Federal Rules of Civil Procedure 8(a)(2) requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument."

*Skinner v. Switzer*, *131 S. Ct. 1289, 179 L. Ed. 2d 233, 242 (2011)*  The basis of Fed. R. Civ. P Rule 8(a)(2) is determined by Plaintiff's statement of facts.  Plaintiff's statement of facts must be "adequate" enough to the point that Plaintiff will be awarded relief based on the legal claims presented and thus making the defendants aware of the basis of the Plaintiff's claim.  *In re: Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 319 n. 18 (3d Cir. 2010), citing *Twombly*, 550 U.S. at 565 n.10.  It must be noted that when filing a complaint, a plaintiff does not have the duty to provide evidence in support of her complaint.  The Plaintiff needs to only "plead a short and plain statement" showing that the Court has jurisdiction, entitlement to relief, and "a demand for relief sought."  Wolcott v. Sebelius, 2011 U.S. App. LEXIS 5019 at *34 (5th Cir. 2011) citing Fed. R. Civ. P. 8(a)).

In evaluating the sufficiency of a complaint, the place to begin is "by taking note of the elements [the] plaintiff must plead to state [a] claim." *Iqbal, 129 S. Ct. at 1947* (internal citation omitted).  Some claims necessarily will demand relatively more factual detail to satisfy this standard, while others will require less.  *Arista Records*, 604 F.3d at 120 (stating that the Supreme Court's recent pleading decisions "require factual amplification [where] needed to render a claim plausible") (internal quotation marks omitted) (alteration in original).

The heightened standard that goes beyond the old Rule 8 (a) "notice pleading" standard requires a plaintiff to plead "sufficient factual matter… to state a claim that is plausible on its face." *Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)*).  In deciding whether a

complaint is plausible, the Supreme Court articulated a two-prong approach. First, a court must separate out "pleadings that... are no more than conclusions" and thus not entitled to the assumption of truth."' *Iqbal, 129 S. Ct. at 1949-50.* Second, a court must "determine whether the 'well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement to relief." *Iqbal, 129 S. Ct. at 1950* (internal quotation marks omitted). A review of court decisions since Iqbal demonstrates that courts have generously granted plaintiffs leave to amend if a court finds that plaintiff's allegations do not comply with the heightened pleading standard set forth in Iqbal.

### D. Fed. R. Civ. P. 12: Civil Rights Violations

The sanction of dismissal is harsh, and Courts are adjured to apply the rule of liberal construction with care and particular strictness to avoid hastily dismissing Complaints alleging civil rights violations. *McGarry v. Pallito, 687 F.3d 505, 510 (2d Cir. 2012); Gregory v. Daly, 243 F.3d 687, 691 (2d Circ. 2001); Tarshis v. Riese, 211 F.3d at 35 (2000); Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995)* Thus, caution is exercised in the place of hasty dismissal of civil rights Complaints. And, Courts construing civil rights Complaints liberally, "accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor." *Chase Grp. Alliance LLC V. City of N.Y. Dep't of Fin., 620 F.3d 146, 150 (2d Circ. 2010)* In this regard the District Courts have been given a clear directive that "[a] case brought under the Civil Rights Act should not be dismissed at the pleading stage unless it appears to a certainty that the plaintiff

would be entitled to no relief under any state of facts which could be proved in support of [her] claim." *Lucarell v. McNair, 453 F.2d 836, 838 (6th Cir. 1972)*

The Plaintiff demonstrates a plausibility in the Complaint that entitles her to relief and raises a reasonable expectation that discovery will reveal evidence of Defendants' wrongful conduct. Here, Pro se Plaintiff, Dr. Hawthorne-Burdine, has alleged enough facts in her Complaint to adequately state all of the elements of the claim that multiple Defendants worked in concert to violate her civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C 2000e, et seq.; (See Exhibit S)[21]   Title 1 of the Americans with Disabilities Act of 1990, 42 U.S.C, 12111, et seq.; Title V, Section 503 of the Act, 42 U.S.C 12203; the Age Discrimination in Employment Act of 1967, as amended; the Michigan Elliott-Larsen Civil Rights Act ("ELCRA," MCL 37.2101); and the Michigan Persons with Disability Civil Rights Act ("PWDCRA," MCL §37.1101 *et seq*.). Plaintiff has also demonstrated enough statements of facts in her Complaint to adequately put Defendants on notice of the claims against them.

The Plaintiff's Complaint is clear. It is not unintelligible or frivolous. And it does not violate the Federal Rule of Civil Procedure 8(a)'s requirement of "short and plain statement of a [discrimination, retaliation, and harassment] claim [with multiple defendants] showing the Plaintiff is entitled to relief. The Complaint

---

[21] Starting the fall 2014 academic term, Plaintiff's faculty position was replaced with a White American individual hired from Wayne State University College of Nursing with tenure and with Plaintiff's title, Associate Professor, in the School of Nursing at Oakland. In his EEOC Position Statement dated July 24, 2014 to the Discrimination charges, Victor Zambardi admits there are no African American senior nursing faculty with tenure in the School of Nursing at Oakland University. Also see Exhibit S for photos of White nursing faculty, which include minority nursing faculty who are not of African American descent ("NAAD").

13

clearly has more than a sufficient statement of the claims describing the willful and egregious wrongful conduct of multiple defendants.  For example, the Complaint specifically identifies the actions of each Defendant and how their actions are wrongful and give plausibility to working in concert with each other against the Plaintiff.  (Doc 4 at ¶¶ 1-300)

### E. Fed. R. Civ. P. 56. Summary Judgement

Defense Counsel Bernard failed to provide any materials of fact in eleven pages that would avert a genuine dispute as to why Defendants are entitled to judgment as a matter of law.  The Plaintiff presents "specific facts showing that there is a genuine issue for trial." *Celotex, 477 U.S. at 324*  Plaintiff refers back to documents and exhibits addressing the issue on Administrative Procedures, which include information on the 22-minute redacted audio-recording of one of her class lectures showing "It is undisputed that the recording revealed no overt threat and no demonstration of intent or ability to carry out an action that required the University to act immediately and without notice" (Doc 4, ¶223; See Exhibit D).

Plaintiff provides an abundance of evidence to counter Counsel Bernard's position provided in his eleven pages of *Statements of Facts* and to show that she is entitled to relief.  The evidence includes four days of sworn statements given by a total of 11 witnesses during arbitration, none of which were from the School of Nursing; post-hearing briefs submitted by Counsel Daniel Bernard for Oakland University and Counsel Robert Fetter for the Association; the Opinion/Award submitted by Arbitrator Robert McCormick; letters and emails of support for the

14

Plaintiff from students[22] and faculty[23]; Plaintiff's rebuttals to the two tenure-review advisory committees;[24] Plaintiff's letter accepting the new contract from Oakland University for reemployment with tenure;[25] and numerous other documents that counter Counsel Bernard's alleged character assassination of Plaintiff.

Under Rule 56(f)(1), the "Court may grant summary judgment for a non-movant if a reasonable" jury determines that the non-movant's evidence presents more than a mere "scintilla of evidence" that a genuine dispute of material fact exists. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)* Based on the evidence the Plaintiff has introduced to the Court, a reasonably-minded jury will be able to find in favor of the Plaintiff and deny summary judgment for the Defendants.

## III.   **Oakland University, Et Al Are Not Immune**

The argument presented by Defense Counsel Bernard on the issue of immunity for Oakland University, Oakland University Police Department, Medicolegal as a Business Associate, and all other Defendants fails against: (a) prospective injunctive relief under Ex parte Young, (b) State supplemental jurisdiction, and (c) worksharing agreement.  Defense Counsel inappropriately makes use of case law to **mislead the Court** in wrongfully dismissing the Plaintiff's Complaint.

### A. <u>The Eleventh Amendment, Sovereign Immunity</u>

---

[22] See Exhibit T for letters and email have been redacted to protect students' private identification information.
[23] See Exhibit U for letter from Karen Dunn and other faculty at Oakland, University of Iowa, and University of Rochester, New York.
[24] See Exhibit V.
[25] See Exhibit W for Plaintiff's acceptance of the New Contract to start teaching the fall 2014 term.

State officials in Michigan are not protected from litigation under the Eleventh Amendment when they violate federal civil rights laws at public institutions funded with taxpayers' federal and state dollars. Plaintiff seeks prospective injunctive relief (See Doc 4, Pages 56-57, Prayer for Relief) and relies on *Ex parte Young, 209 U.S. 123 (1908)* to strip Oakland University's officials of immunity under the Constitution's Eleventh Amendment. Courts in various Circuits have decided for Plaintiffs in federal claims against state officials sued in their official capacities to prevent a continuing violation of federal law and to award prospective injunctive relief as sought by the Plaintiff. *Id. 155-56, 28 S. Ct. 441, 452, 52 L. Ed. 714; See also Alden v. Maine, 527, 757, U.S. (1999); Seminole Tribe v. Florida, 517 U.S. 44, 73 (1996); Nelson v. University of Texas at Dallas, et al., (5th Circ) (July 2008); Warnock in Sternadel v. Scott, No. 00-50106, 2001WL563628 (5th Cir. May 7, 2001); State Employees Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 96-98 (2d Cir. 2007); Meiners v. Univ. of Kan., 359 F.3d 1222, 1232-33 (10th Cir. 2004); Koslow v. Pennsylvania, 302 F.3d 161, 179 (3d Cir. 2002); Carten v. Kent State Univ., 282 F.3d 391, 396 (6th Cir. 2002); Treleven v. Univ. of Minn., 73 F.3d 816, 819 (8th Cir. 1996); Coakley v. Welch, 877 F.2d 304, 307 n.2 (4th Cir. 1989); Elliott v. Hinds, 786 F.2d 298, 302 (7th Cir. 1986)*

Contrary to what Defense Counsel Bernard (and Counsel Van Dyke for Medicolegal) would have this Court believe, *Kimel's* case does not affect ADEA litigation when naming state officials in their official capacity and utilizing the Ex

16

parte Young's exception to the Eleventh Amendment.  Resultantly, state employees can still obtain prospective injunctive relief under the ADEA in federal court.  *Kimel v. Florida Bd. of Regents, 528 U.S. 62, 91 (2000)*.  Also, *Title I of the ADA* incorporates the provision of *Title VII of the Civil Rights Act of 1964*, which provides for equitable remedies, including injunctive relief, reinstatement, and backpay, for persons who have suffered discrimination in employment.  See *42 U.S.C. § 12117 (Supp. IV 1992) (incorporating 42 U.S.C. § 2000e-5(g))*.

### B. <u>Supplemental Jurisdiction and Work sharing Agreement</u>

*28 U.S.C. §1367* provides federal courts with supplemental jurisdiction over state law claims arising from the same subject matter.  The EEO Commission cross-filed Plaintiff Hawthorne-Burdine's discrimination and retaliation charges with the State of Michigan Department of Civil Rights (See Exhibit A), giving supplemental jurisdiction for this Court to hear Plaintiff's five State law claims.  (See Doc. 4, ¶¶ 12, 277-300 for State Law Claims)  And, *29 C.F.R. § 1626.10* provides the EEO Commission with a worksharing agreement that allows prompt processing of charges not pursued by the State.  Under *M.C.L. § 600.6304,* Multiple Defendants acted in concert to defame Plaintiff Hawthorne-Burdine and are without protection under *M.C.L. § 691.1407.*  Also see *Velez v. Tuma, Doc. No. 138952, No. 5 (July 23, 2012)*  Accordingly, and contrary to what Defense Counsel Bernard has stated in his argument, the State officials at Oakland can be prosecuted in their official and individual capacities in Plaintiff's case for violating EEOC/MDCR civil rights laws.

## CONCLUSION

For all of the foregoing reasons, the Court should deny Defendants' Motion in its entirety to Dismiss and/or for Summary Judgment.


Respectfully Submitted,


By:  /s/ Dorothy Hawthorne-Burdine
Plaintiff, Pro Se
2654 Lantern Lane, Apt. 102
Auburn Hills, MI 48326
(319) 400-3803
Dated: December 7, 2015            drthyhwthrn@aol.com


## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2015, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing and a true copy to all Counsel of Record.


/s/ Dorothy Hawthorne-Burdine
Plaintiff, Pro Se
2654 Lantern Lane, Apt. 102
Auburn Hills, MI 48326
(319) 400-3803
drthyhwthrn@aol.com

18